**SPRINGFIELD INSURANCE COMPANY, Plaintiff,**

v.

**Robert G. FRY and Frances D. Fry, Defendants.**

**Civ. No. 6318.**

United States District Court
N. D. Oklahoma.

May 12, 1967.

F. D. Hettinger, of Boesche, McDermott & Eskridge, Tulsa, Okl., for plaintiff.

Irvine E. Ungerman, of Ungerman, Grabel, Ungerman & Leiter, Tulsa, Okl., for defendants.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

The plaintiff sues to set aside the transfer by the defendant Robert G. Fry of his insurance agency to his wife, Frances D. Fry. On December 16, 1964, the defendant Robert G. Fry executed a written Bill of Sale to his wife, Frances D. Fry, by which he conveyed to his wife his insurance agency which he had owned and operated under his name. The defendant Robert G. Fry was indebted to the plaintiff at this time but the amount was in dispute. The consideration set out to be paid by the defendant, Frances D. Fry, for this insurance agency was an agreement to pay the accounts payable of the insurance agency to the Home Insurance Company, Buffalo Insurance Company, and the Liberty Universal Insurance Company which totaled approximately $29,000.00. The defendants contend that in addition to this consideration the defendant Frances D. Fry orally agreed with her co-defendant to support him and the family of the defendants in the future.

It was the testimony of the defendants that the defendant Frances D. Fry had no knowledge of the obligation of the defendant Robert G. Fry to the plaintiff at the time of the aforementioned sale of the insurance agency on December 16, 1964. On March 3, 1965, the plaintiff brought suit against the defendant Robert G. Fry to recover the sum of $29,133.32, and on July 16, 1965, a judgment was entered in favor of the plaintiff by stipulation for the sum of $24,000.00, which sum remains unpaid to this date. The defendant Robert G. Fry continued to work in the insurance agency office after the date of sale but without compensation until January, 1966, since which time he has been paid the sum of

$100.00 per month for his services rendered in working in the office of the agency. The defendant Robert G. Fry applied for Social Security benefits after said sale of his insurance agency but the application is still pending and has not been granted as of the time of trial apparently due to his work and the extent thereof in the insurance agency. Prior to the aforementioned sale from husband to wife the family of the defendants was maintained from the income of the insurance agency. Subsequent to the sale of the insurance agency between the defendant Robert G. Fry and his wife, Frances D. Fry, the family has continued to be supported by income realized from said insurance agency. After the sale of said insurance agency by the defendant Robert G. Fry to his wife he then owned only a half interest in a 1961 Corvair automobile worth less than $1500.00, had a very nominal amount in a bank account and was indebted to the plaintiff, with reference to its account, in an amount which ultimately resulted in the aforementioned $24,000.00 judgment against him. Therefore, the defendant Robert G. Fry was clearly insolvent following the sale of his insurance agency to his wife.

The valuation of said insurance agency at the time of said sale according to the evidence of both parties was in the approximate amount of $56,000.00. Thus, the defendant Robert G. Fry sold an insurance agency worth $56,000.00 to his wife for her agreement to pay approximately $29,000.00 in accounts owed by the agency and her alleged side or oral agreement to support the defendant, her husband, Robert G. Fry and the family in the future.

Title 24, Oklahoma Statutes, Section 5, provides as follows:

"§ 5. Transfers with intent to defraud

Every transfer of property or charge thereon made, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands is void against all creditors of the debtor, and their successors in interest, and against any persons upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

Transfers of property between husband and wife are not in themselves invalid, nor do they of themselves raise an inference of fraud, but such transactions are scrutinized with greater closeness than such transactions between unrelated parties. Jacks v. Dunham (1940), 188 Okl. 353, 108 P.2d 1020; Hildebrand v. Harrison (Okl.1961), 361 P.2d 498.

"Badges of fraud" are suspicious circumstances that overhang a transaction or appear on the face of papers involved and a single badge of fraud may stamp a transaction as fraudulent, and when several badges of fraud are found in combination, strong and clear evidence will be required to repel a conclusion of fraud. Payne v. Gilmore (Okl.-1963), 382 P.2d 140.

The obligations assumed to be paid by the defendant Frances D. Fry consisted as aforesaid of paying the accounts of three insurance companies to which the insurance agency was indebted. The fact that the account of the plaintiff, a fourth insurance company creditor, was not also to be paid by the purchaser and this obligation was not revealed to her by her husband is a badge of fraud herein overhanging the transaction.

A further badge of fraud herein is the fact that the defendant Robert G. Fry was rendered insolvent by the sale of his insurance agency under the agreement made regarding payment to him for the same.

The Court finds and concludes from the evidence herein that the transfer or sale of the said insurance agency from the defendant Robert G. Fry to the defendant Frances D. Fry, his wife, under terms by which she would pay all of the obligations of the agency except that of the plaintiff and said transfer or sale rendered the defendant Robert G. Fry

insolvent was accomplished by the defendant Robert G. Fry with intent to delay or defraud the plaintiff as his creditor.

The Court finds from the evidence that the defendant Frances D. Fry has been making payments to the three insurance companies which she agreed to pay since she received title to the insurance agency, but that as such payments have been made other obligations have been incurred with these companies and the agency is still indebted to said companies in an amount now which far exceeds that owed at the time of sale. With reference to the defendant Frances D. Fry supporting the defendant Robert G. Fry and family since receiving title to the insurance agency, this is but a mere continuation of the situation existing prior to the sale where the family was supported by income from the agency and this is particularly a matter of continuity inasmuch as the defendant Robert G. Fry has continued to work in the agency after the sale along with his wife who claims title by the sale.

The Court further finds that no oral agreement was entered into between the defendants at the time of the sale of the insurance agency whereby the defendant Frances D. Fry became obligated for the future support of the defendant Robert G. Fry and the family. This conclusion is reached by the Court for the reason that if such an agreement had been reached between the parties at the time of the sale of the insurance agency the same would have been incorporated in the written and executed Bill of Sale transferring the agency. No mention is made of such claimed oral agreement in the executed written Bill of Sale. Therefore, the Court finds and concludes that no such agreement was entered into between the defendants which was or could be considered to be a binding obligation from the defendant Frances D. Fry to the defendant Robert G. Fry. At most there was a mere understanding that the family would continue to be supported by the income from the insurance agency in the future as it had been in the past.

Moreover, ordinarily a transfer of property in consideration of future support is held to be invalid, at any rate, as to existing creditors whose rights are prejudiced by such transfer. 24 Am.Jur., Fraudulent Conveyances, Section 35, pages 193–195; 23 A.L.R. 584. The plaintiff was prejudiced when the defendant Robert G. Fry conveyed his insurance agency, received no money for the same, retained virtually no property with which to pay the sizeable obligation of the plaintiff and was rendered insolvent by selling his insurance agency. The above authority also provides that where the consideration for a conveyance is the future support of the transferrer, the rights of creditors to have the transaction set aside is not affected by the showing as to the actual intention of the transferrer or knowledge on the part of the transferee as to the transferrer's financial status. Knowledge of debts which existed at the time of the conveyance is imputed to the transferee as a matter of law. 24 Am.Jur., Fraudulent Conveyances, Section 35, at page 194.

However, if the transferee parted with valuable consideration for the conveyance as well as having promised to support the transferrer in the future the creditor must show that the transferee knew or ought to have known that the rights of the transferrer's creditors would be defeated by the conveyance. In this connection, the Court finds that the consideration to be paid by the defendant Frances D. Fry for the insurance agency by paying in the future the present outstanding obligations to all other creditors of the insurance agency save the plaintiff does not amount to a consideration paid by her as far as the plaintiff and this case is concerned in view of the fact that while she was paying on these outstanding obligations of the business she was receiving the income of the business as well as creating new obligations with these same creditors. Thus, the Court finds that actually no consideration has been paid by the defendant Frances D. Fry to the defendant Robert G. Fry for the insurance

agency which she received by said Bill of Sale which she would be entitled to recover herein. Certainly she paid no money for the agency when she obtained the Bill of Sale. In addition, the defendant Frances D. Fry, in purchasing the insurance agency and in the exercise of due care, should have inquired and learned of the fact that her husband in operating his insurance agency was indebted to the plaintiff Springfield Insurance Company and she is thus charged with this knowledge. A prudent person buying a business under these circumstances would ascertain its debts.

Moreover, when suit was instituted by the plaintiff against the defendant Robert G. Fry on its account on March 3, 1965, less than three months after the sale between the defendants, the Court finds that the defendant Frances D. Fry then definitely learned of the obligation of her husband to the plaintiff which was connected with the insurance agency. Any consideration thereafter parted with by her in payment for the insurance agency would have been made with full knowledge on her part with reference to the claim of the plaintiff and its effect on the sale of the insurance agency and cannot, therefore, be deemed to be a consideration paid by the defendant Frances D. Fry to her husband for the insurance agency to the detriment of the plaintiff. McFadyen v. Masters (1901), 11 Okl. 16, 66 P. 284; 24 Am. Jur., Fraudulent Conveyances, Section 36, page 195. Furthermore, there was no evidence presented to the Court as to the amount of any consideration claimed to have been paid by Frances D. Fry from the time she purchased the insurance agency until said suit was filed by the plaintiff against her husband.

The Court, therefore, finds and concludes that the sale of the said insurance agency from the defendant Robert G. Fry to his wife, Frances D. Fry, was accomplished with intent to defraud the plaintiff as a creditor of the defendant Robert G. Fry, was not accomplished between the defendants for a valid or an adequate consideration as far as the plaintiff is concerned and for the reasons heretofore set out should be declared void as against the plaintiff, vacated, set aside and made available as property which the plaintiff may look to in satisfaction of its judgment against the defendant Robert G. Fry.

The plaintiff has suggested herein that the Court impose an equitable lien against the insurance agency in its favor. The Court declines to do this and will leave to the parties the matter of effecting any such agreeable arrangement.

Counsel for the plaintiff will prepare an appropriate judgment in conformity with the above and submit the same to the Court for signature and entry herein.